IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ESTHER COLEMAN, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | No. 3:12-CV-1983-L (BF) |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
|     Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This is an appeal from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying the claim of Esther Coleman ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The Court considered Plaintiff's Brief, Defendant's Response Brief, and Plaintiff's Reply Brief. The Court reviewed the record in connection with the pleadings. The Court recommends that the final decision of the Commissioner be AFFIRMED.

**Background**[1]

**Procedural History**

On November 23, 2009, Plaintiff filed an application for DIB. (Tr. 165-68.) In her application, Plaintiff alleged a disability onset date of July 7, 2009, due to foot surgery and diabetes. (Tr. 165-68, 182.) The application was denied initially and again upon reconsideration. (Tr. 104-05.)

Plaintiff requested a hearing, which was held on December 9, 2010. (Tr. 78-103.) Plaintiff testified at the hearing, along with a vocational expert, Dr. Terry Vander-Molen ("VE"). (Tr. 78.)

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

At the hearing, Plaintiff was represented by counsel, Robert Todd. (*Id.*) On February 7, 2011, the Administrative Law Judge ("ALJ") issued an unfavorable decision. (Tr. 65-71.) Plaintiff requested review of this decision from the Appeals Council, however, the request for review was denied on May 23, 2012. (Tr. 1-5.) Thus, the ALJ's decision became the final decision of the Commissioner from which Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

**Plaintiff's Age, Education, and Work Experience**

Plaintiff was born on September 28, 1951, making her 59 years old at the time of her hearing. (Tr. 81, 165.) Plaintiff completed three years of college at Spelman College. (Tr. 81.) She obtained an associate degree, as well as several professional degrees. (Tr. 81-82.) Plaintiff has past relevant work experience as a specialty sales representative, a trainer, a supervisor of vendor quality, and a billing clerk. (Tr. 82, 95-96.)

**Plaintiff's Medical Evidence[2]**

Plaintiff provided relevant treatment records dated from early 2009 through early 2011, which documented her treatment for asthma, diabetes, hypertension, and pain disorders due to pain in her back and foot. On February 17, 2009, a chest x-ray was performed due to Plaintiff's wheezing. (Tr. 243.) The results of the x-ray were abnormal and thus a CT scan of the chest was ordered. (*Id.*) The scan revealed tiny nodules of unknown significance on Plaintiff's lungs. (Tr. 235.) On March

---

[2] The Court notes that Plaintiff submitted medical records which included evidence of Plaintiff's treatment *after* the ALJ's February 7, 2011 decision. However, such evidence is not material to this decision and this Court will only consider the relevant medical evidence. *See Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985) (evidence must "relate to the time period for which benefits were denied.").

24, 2009, Plaintiff was diagnosed with acute bronchitis with continued cough and congestion. (Tr. 270-71.)

Records from Dr. Andrea Brown indicate that Plaintiff was treated for uncontrolled type II diabetes, asthma, and hypertension from February 17, 2009, through October 23, 2009. (Tr. 270-85.) These records generally reflect that Plaintiff appeared to be a healthy individual in no distress. (Tr. 270, 273, 285.) The records demonstrate that Plaintiff had no significant smoking or alcohol usage history, she played tennis 3-4 times a week, and she did not follow a specific diet. (Tr. 270, 272, 275, 284.) On January 13, 2010, Plaintiff reported to Dr. Brown for a routine evaluation. (Tr. 262-65.) The doctor again noted that Plaintiff appeared to be healthy and in no distress. (Tr. 263.) The records reflect that Plaintiff had normal activity and energy level, no change in appetite, no major weight gain or loss, and she played tennis 3-4 times a week. (Tr. 262.)

On February 23, 2010, a physical residual functional capacity ("RFC") assessment was performed by a non-examining state agency medical consultant, Dr. Kavitha Reddy. (Tr. 286-93.) The assessment was based upon Plaintiff's diagnoses of diabetes and hypertension. (Tr. 286.) The doctor found Plaintiff capable of lifting 50 pounds occasionally and 25 pounds frequently. (Tr. 287.) Dr. Reddy opined that Plaintiff could stand and/or walk six hours in an eight-hour workday and she could sit about six hours in an eight-hour workday. (*Id.*) The doctor also indicated that Plaintiff should avoid concentrated exposure to fumes and odors. (Tr. 290.) Dr. Reddy noted that Plaintiff was prescribed medication for her hypertension, she had no evidence of end organ damage from diabetes, she had a normal gait, and a grossly intact neurological exam. (Tr. 293.) These findings were affirmed by Dr. Bonnie Blacklock on April 26, 2010. (Tr. 294.)

Plaintiff had "heel spurs" and was diagnosed with plantar fasciitis. (Tr. 345.) Thus, in July 2009, Plaintiff's podiatrist, Dr. Dan Jones, performed a plantar fascia release on Plaintiff's left foot. (Tr. 345.) On May 6, 2010, Plaintiff presented to Dr. Donald Ozumba complaining of low back pain. (Tr. 296.) Plaintiff indicated to the doctor that because of her foot pain and abnormal gait, she had developed low back pain. (*Id.*) She told Dr. Ozumba that she used to be very active, playing tennis weekly, but that now she was relatively inactive and had gained a significant amount of weight as a result. (*Id.*) The doctor noted that Plaintiff was using a hydrocodone patch for the pain. (*Id.*) Upon physical examination, Dr. Ozumba made the notations that Plaintiff was a well-developed, well-nourished female in no acute distress, she walked with an antalgic gait nearly toe walking on her left foot, and she had paraspinous musculature pain on the left and right side of her back. (*Id.*) Plaintiff was assessed with left lower back pain and left severe plantar fasciitis. (*Id.*)

Dr. Ozumba referred Plaintiff to Dr. Christian Royer. On May 18, 2010, Plaintiff presented to Dr. Royer complaining of pain in her left heel. (Tr. 345-46.) Upon examination, the doctor noted that Plaintiff's surgical wound appeared to be healed and there were no signs of infection. (Tr. 345.) Dr. Royer's examination revealed Plaintiff's heel was tender to the touch, her ankle range of motion was somewhat limited, and she had some numbness in and around her heel. (*Id.*) X-rays were taken and revealed no obvious evidence of bony abnormality, but the doctor ordered an MRI and EMG to be taken as well. (Tr. 345-46.) The doctor's impression was chronic left plantar fasciitis with possible peripheral neuropathy. (Tr. 346.) Dr. Royer informed Plaintiff that her symptoms were similar to reflex sympathetic dystrophy ("RSD"), but were more of a chronic nature. (*Id.*) The EMG study was normal with no evidence of neuropathy, but the MRI showed abnormalities consistent with chronic plantar fasciitis, but no other significant signs of abnormality to explain Plaintiff's plantar

pain. (Tr. 335-36.) On June 4, 2010, Plaintiff reported significant improvement with physical therapy and the doctor noted his impression was "likely chronic regional pain syndrome." (Tr. 336.)

On May 10, 2010, Plaintiff presented to Select Physical Therapy for her intake examination. (Tr. 326-29.) Plaintiff reported that she was unable to work, she walked with a cane, and she was limited to standing for ten minutes and walking five to ten minutes. (Tr. 326.) Plaintiff's chief complaints were pain and loss of motion or stiffness. (*Id.*) On May 17, 2010, Plaintiff attended physical therapy and the therapist noted that Plaintiff's overall condition was improving, her gait was improving, Plaintiff was feeling better overall, Plaintiff quit taking her pain medication, and she was able to ascend twenty steps at her cousin's house without difficulty. (Tr. 321-23.) On May 24, 2010, Plaintiff reported increased walking over the weekend which resulted in pain in her lower back, however, Plaintiff indicated she was having significant improvement with physical therapy. (Tr. 315-17.) On June 1, 2010, Plaintiff reported increased left plantar foot pain with activity and while at rest. (Tr. 309-11.) Two days later, Plaintiff indicated that she had good relief from her heel symptoms following the ultrasound treatment, however, she continued to have discomfort with standing and walking and she was unable to walk without the use of her cane. (Tr. 306-08.) On June 7, 2010, Plaintiff reported that she was still limited with standing and walking and she was unable to work, however, she also indicated that she was able to get herself to and from the grocery store with minimal difficulty. (Tr. 298-305.) The physical therapist commented that Plaintiff's pain had decreased, she no longer had to take hydrocodone for her pain, and that her symptoms were managed well with taking 2 aleve per day. (Tr. 301.) The therapist indicated that "[t]race improvments are noted at this time." (Tr. 303.)

Plaintiff presented to physical therapy again on June 16, 2010. (Tr. 354-56.) Plaintiff reported frustration due to a lack of a definitive diagnosis from Dr. Royer. (Tr. 354.) The physical therapist indicated that Plaintiff's condition was unchanged. (*Id.*) On July 28, 2010, Plaintiff requested to be discharged from physical therapy because it was too expensive. (Tr. 349.) The physical therapist also indicated that Plaintiff had reached maximum medical benefit from the physical therapy. (*Id.*) Records demonstrate that the therapist's prognosis of Plaintiff at her time of discharge was fair. (*Id.*) Notations also reflect that Plaintiff could stand or walk for thirty minutes, and she was still using a cane for ambulation. (Tr. 348.)

Plaintiff received physical therapy treatment from Metroplex Physical Therapy between July 21, 2010, and October 12, 2010. (Tr. 372-80.) On August 16, 2010, Plaintiff told the therapist that she felt "about 30% better than before." (Tr. 379.) The therapist noted that Plaintiff's pain had decreased to 5 or less in 3 visits, her swelling had decreased, and her gait had improved with less pain and limp. (*Id.*) On September 14, 2010, Plaintiff reported that she now has days of no severe pain and she felt "about 50% better than before." (Tr. 377.) The therapist indicated that Plaintiff's pain level had decreased to 4. (*Id.*) Plaintiff was discharged with a fair prognosis and the therapist noted that her pain level was at 3. (Tr. 372, 377.)

Plaintiff presented to Dr. Royer for a follow-up appointment on August 27, 2010. (Tr. 76-77.) Dr. Royer noted that although Plaintiff indicated she had no change in her pain, she appeared to have more flexibility in her foot and ankle and less stiffness in her gait. (Tr. 76.) The doctor's impression was chronic regional pain syndrome ("CRPS"), status post plantar fascia release. (*Id.*) Dr. Royer recommended Plaintiff visit a pain management specialist. (*Id.*) On September 7, 2010, Plaintiff was

examined by a pain specialist, Dr. Aaron Lloyd. (Tr. 73-75.) Dr. Lloyd provided a differential diagnosis of "reflex sympathetic dystrophy of the left foot versus radiculitis." (Tr. 74.)

Dr. Dan Jones, Plaintiff's podiatrist, completed a physical RFC questionnaire on November 4, 2010. (Tr. 382-84.) Plaintiff's weight was documented at 180 pounds. (Tr. 382.) The doctor indicated that Plaintiff could sit, stand/walk, or lie down for no more than an hour each in an eight-hour workday. (*Id.*) Dr. Jones opined that Plaintiff could occasionally lift up to ten pounds, but could never lift more than ten pounds. (*Id.*) The doctor noted that Plaintiff would never be able to bend, squat, climb, reach up, or kneel. (Tr. 383.) Dr. Jones was of the opinion that Plaintiff's degree of pain was severe and chronic. (*Id.*) Finally, the doctor indicated that Plaintiff would frequently need rest periods during the day and she would miss work four or more days a month due to her pain. (Tr. 384.)

**Plaintiff's Testimony at the Hearing**

Plaintiff, represented by counsel, testified on her own behalf at the hearing held on December 9, 2010. (Tr. 78-103.) Plaintiff testified that she lives alone, she can drive with some limitations, and she is able to take care of her own grooming, bathing, and dressing, but it takes her a long time to get those things accomplished. (Tr. 82, 85-86.) Plaintiff stated that she is unable to do her household chores and so her family assists her with cleaning the house, doing the laundry, grocery shopping, and cutting the grass. (Tr. 86.) Plaintiff testified that she attends Select Physical Therapy and she is seeing improvement with physical therapy. (*Id.*) She also said that she is taking pain medication, which numbs the pain, but also makes her sleepy. (Tr. 87-88.) Plaintiff stated that she can stand, walk, or sit for no more than ten or fifteen minutes before the pain becomes unbearable. (Tr. 89.)

7

Plaintiff testified that her pain level is at three with her medication. (Tr. 90.) She said that her medications include hydrocodone, lyrica, gabapentin, and tramadol. (*Id.*)

**The Hearing**

A VE also testified at the hearing regarding jobs in the national economy. The ALJ posed the following hypothetical: assume a person of Plaintiff's age, education, and experience who can sit for 6 hours in an 8-hour workday; stand and walk for 2 hours in an 8-hour workday; lift and carry 10 pounds occasionally, and 10 pounds frequently; must have the ability to take stretch breaks in 20-minute intervals; no ropes, ladders, or scaffolds; all other postural maneuvers occasionally; must avoid concentrated exposure to fumes; and limited to detailed, but not complex work. (Tr. 96, 100.) The ALJ then asked the VE whether this hypothetical person could perform any of Plaintiff's past relevant work. (Tr. 96, 100-01.) The VE responded affirmatively and testified that the hypothetical person could perform Plaintiff's past work as a billing clerk. (Tr. 96-97, 101.) The VE explained that the billing clerk occupation was sedentary in nature, it involved detailed but not complex work, and it would allow for stretching breaks. (Tr. 96-97.) The VE stated that an individual who misses two or more days a month would probably not be able to sustain competitive employment. (Tr. 97.) The VE testified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. 101.)

Upon cross-examination by Plaintiff's counsel, the VE indicated that a person who had to lie down for an hour or more during the workday would not be able to perform the position of a billing clerk. (Tr. 99.) The VE also indicated that medication which made a person drowsy and inattentive could interfere with that person's ability to perform detailed work. (Tr. 100.)

8

**The Decision**

In the February 7, 2011 decision, the ALJ analyzed Plaintiff's claim pursuant to the familiar five-step sequential evaluation process.[3] Before proceeding to step one, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2014. (Tr. 67.) At step one, the ALJ determined that Plaintiff had not engaged in substantial work activity since her July 7, 2009 onset date. (*Id.*) At step two, the ALJ found that Plaintiff's diabetes mellitus, status post plantar fasciitis release, obesity, depression, asthma, spondylosis, and facet arthropathy of the lumbar spine were severe impairments. (*Id.*) At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the requirements of any listed impairments for presumptive disability under the Social Security Regulations. (Tr. 67-68.)

Before proceeding to step four, the ALJ found that Plaintiff retained the RFC to perform sedentary work, which included the ability to lift and carry 10 pounds occasionally and 10 pounds frequently, stand and walk 2 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. (Tr. 68.) The ALJ found that Plaintiff would need stretch breaks every 20 minutes and she could never climb ladders, ropes, or scaffolds, but she could occasionally climb ramps and stairs, kneel, stoop, crouch, crawl, and balance. (*Id.*) In addition, the ALJ found that Plaintiff could not be exposed to fumes and she could not perform tasks that require a reasoning level greater than 4. (*Id.*)

---

[3] (1) Is the claimant currently working? (2) Does she have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix 1? (4) Does the impairment prevent her from performing her past relevant work? (5) Does the impairment prevent her from doing any other work? 20 C.F.R. § 416.920.

At step four, based on the testimony of the VE, the ALJ determined that Plaintiff could perform her past work as a billing clerk. (Tr. 71.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act from July 7, 2009, her alleged onset date, through February 7, 2011, the date of the decision. (*Id.*)

## **Standard of Review**

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

10

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

**Issue**

Whether the ALJ committed prejudicial legal error by failing to consider Plaintiff's RSD and CRPS as a medically determinable impairment under SSR 03-2p.

**Analysis**

Plaintiff contends that the ALJ committed legal error because she failed to consider Plaintiff's documented diagnoses of RSD and CRPS under the Social Security Rulings (the "Rulings"). (Pl.'s Br. at 8-15.) Plaintiff further argues that such error was prejudicial because the ALJ's failure to find Plaintiff's RSD/CRPS to be a severe medically determinable impairment undermined the ALJ's credibility determination and resulted in the ALJ's rejection of the opinion of her treating physician, Dr. Jones. (*Id.* at 9, 11.) Plaintiff's contention fails for several reasons.

The Rulings provide that RSD/CRPS is a chronic pain syndrome which typically results from trauma to a single extremity. SSR 03-2p, 2003 WL 22399117, at *1 (Oct. 20, 2003). However, the syndrome can also be a byproduct of disease, surgery, or injury to another part of the body. *Id.* The syndrome's most common clinical manifestations include intense pain and autonomic dysfunction at the site of the initial injury. *Id.* It is not unusual for the degree of pain alleged to be out of proportion to the severity of the injury. *Id.* A diagnosis of RSD/CRPS requires the presence of persistent, intense pain, and impaired mobility of the affected area, coupled with swelling, autonomic instability, abnormal hair or nail growth, osteoporosis, or involuntary movements of the affected region of the original injury. *Id.* at *2. When a claimant's treatment records document this severe pain in an area where one of the these signs has also been documented, disability adjudicators can accurately determine that RSD/CRPS is present and constitutes a medically determinable impairment. *Id.* at *4.

Plaintiff asserts that the ALJ was required to specifically analyze Plaintiff's allegations of RSD/CRPS pursuant to SSR 03-2p. (Pl.'s Br. at 8.) However, an alleged impairment due to RSD/CRPS is evaluated in the same manner as any other impairment: by using the five-step sequential evaluation process. SSR 03-2p, 2003 WL 22399117, at *6; *see also Ridenhour v. Astrue*, No. 4-08-CV-156-A, 2009 WL 77765, at *1 (N.D. Tex. Jan. 12, 2009) (rejecting the claimant's argument that SSR 03–2p creates a special procedure for evaluating claims involving RSD). Thus, there is no special procedure under SSR 03-2p that the ALJ was required to follow.

Plaintiff additionally avers that the ALJ's failure to recognize Plaintiff's RSD/CRPS as a medically determinable impairment or her failure to even mention SSR 03-2p was error. (Pl.'s Br. at 8-9.) An agency must follow its own internal procedures, even where such procedures are stricter than what would otherwise be required. *Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981). The Rulings are therefore binding on the Commissioner since they were published under the authority of the Commissioner. *Id.* However, "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)) (internal quotation marks omitted). Thus, Plaintiff must show prejudice resulted from the ALJ's alleged errors.

Plaintiff contends that the ALJ should have found her RSD/CRPS a medically determinable impairment because Plaintiff exhibited the signs of the syndrome and because two of Plaintiff's doctors diagnosed her with the condition. (Pl.'s Br. at 8-9.) Plaintiff cites to a case out of the Eleventh Circuit to support her argument. *See Bernstein v. Astrue,* No. 3:09-CV-17-J-34MCR, 2010 WL 746491, at *5 n.8 (M.D. Fla. Mar. 3, 2010) (finding a medically determinable impairment had

13

been established because two doctors diagnosed the claimant with RSD). The Commissioner counters that there was no definitive diagnosis from any of Plaintiff's doctors, but even if there was a diagnosis, Plaintiff failed to show the requisite prejudice that resulted from the ALJ's failure to consider her RSD/CRPS. (Def.'s Br. at 5.) This Court agrees.

While it is debatable as to whether any of Plaintiff's doctors "definitively" diagnosed Plaintiff with RSD/CRPS, there certainly is evidence that Plaintiff had symptoms of the syndrome, including a differential diagnosis of RSD from Dr. Lloyd and records from Dr. Royer where he indicated Plaintiff exhibited symptoms similar to RSD and she likely had CRPS. Nonetheless, assuming the ALJ erred by not finding Plaintiff's RSD/CRPS a medically determinable impairment, Plaintiff has still failed to demonstrate that such finding might have led to a different outcome and, therefore, she was prejudiced by this error.

Plaintiff asserts that the ALJ's failure to address her RSD/CRPS led to an erroneous finding that Plaintiff was not credible. (Pl.'s Br. at 9-11.) Plaintiff claims that the ALJ found her allegations of pain not credible because of a lack of objective evidence to support the severity of the pain she alleged. (*Id.* at 10.) Because RSD/CRPS "is a disease for which objective findings can be minimal," *Bernstein,* 2010 WL 746491, at *8, Plaintiff avers it was error to not find her credible. Plaintiff cites to several cases outside the Fifth Circuit to support her position, however, the Court finds these cases unpersuasive and distinguishable from the facts at hand.[4] The Rulings provide that an ALJ is not free to reject a claimant's statements regarding her pain based *soley* on a lack of objective medical

---

[4] Plaintiff also cites to a Fifth Circuit case to support her position, *Wilson v. Astrue,* No. 3:09-CV-1318-B, 2010 WL 1644748 (N.D. Tex. Mar. 19, 2010), *rec. adopted,* 2010 WL 1644172 (N.D. Tex. Apr. 22, 2010). However, this case is also distinguishable because in *Wilson* the ALJ failed to provide any reasons for finding the claimant not credible. *See id.* at *10. Here, the ALJ provided her reasons for such a finding.

14

evidence. SSR 96-7p(4), 1996 WL 374186, at *1 (July 2, 1996). Instead, the ALJ must consider the entire case record. *Id.*

In the instant case, a lack of objective medical evidence was only one factor the ALJ considered in assessing Plaintiff's credibility. More importantly, the ALJ found Plaintiff not credible because of inconsistencies in her hearing testimony and the doctor's treatment notes, and her exaggeration of symptoms as reflected in the medical evidence. (Tr. 70.) At the hearing, Plaintiff testified that she was able to take care of her personal hygiene, but she was unable to do her own grocery shopping. However, notes from her physical therapy session on June 7, 2010, demonstrate that Plaintiff was able to get herself to and from the grocery store with minimal difficulty. Furthermore, in Plaintiff's initial appointment with Dr. Ozumba in May of 2010, Plaintiff indicated that she had gained a significant amount of weight due to inactivity because of her foot and back pain. However, the medical evidence reflects that Plaintiff actually lost weight between the months of January 2010 and May 2010. (*See* Tr. 262, 345) (Plaintiff's weight on January 13, 2010, was 194 pounds and her weight on May 18, 2010, was 188 pounds). By November of 2010, Plaintiff had lost an additional eight pounds, as she weighed 180 pounds. (Tr. 382.) The ALJ considered the entire case record in assessing Plaintiff's credibility and her decision comports with Rulings 96-7p and, accordingly, 03-2p. *See Ridenhour,* 2009 WL 77765, at *10 (upholding the ALJ's finding that claimant was not credible as to her subjective complaints of pain due to RSD because the complaints were exaggerated, uncorroborated, and unsubstantiated by the medical evidence and testimony).

Plaintiff additionally alleges prejudice because the ALJ's failure to recognize RSD/CRPS as a medically determinable impairment led to an erroneous rejection of the opinion of Plaintiff's treating podiatrist, Dr. Jones. (Pl.'s Br. at 11-12.) The opinion of a treating physician who is familiar

with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Newton,* 209 F.3d at 455 (citing *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. If good cause is shown, then the ALJ may accord the treating physician's opinion less weight, little weight, or even no weight. *Paul v. Shalala,* 29 F.3d 208, 211 (5th Cir. 1995). If the ALJ does not accord a treating doctor's opinion controlling weight, the ALJ must set forth specific reasons for the weight given, supported by the medical evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ accorded minimal weight to the opinion of Dr. Jones and she set forth specific reasons for doing so in her decision. On November 4, 2010, Dr. Jones provided an opinion regarding Plaintiff's ability to perform work-related activities, essentially opining that Plaintiff would be unable to complete an eight-hour workday even if performing sedentary work. The ALJ explained that she assigned minimal weight to this opinion due to it being inconsistent with the remaining medical evidence in the record. (Tr. 70.) Furthermore, Dr. Jones provided a conclusory opinion with very few objective facts and no treatment notes. (*Id.*) The medical evidence in the record supports the ALJ's finding that Plaintiff was capable of performing sedentary work with a few additional restrictions.

16

Dr. Jones opined that Plaintiff's limitations became disabling on May 19, 2009. However, treatment records from Dr. Brown demonstrate that Plaintiff was playing tennis 3-4 times a week in October 2009 and January 2010. Additionally, in January 2010, Plaintiff specifically denied any muscle or joint pain. (Tr. 263.) In her reply brief, Plaintiff argues that the doctor must have copied her medical history and activities in those records from Plaintiff's prior visits before her surgery. (Pl.'s Reply Br. at 2-3.) This argument is unavailing. Plaintiff's surgery was in July 2009. Records from January 13, 2010, indicate that Plaintiff had "[n]ormal activity and energy level, no change in appetite. No major weight gain or loss." (Tr. 262.) However, records from March 24, 2009, make no such indication. (Tr. 270-71.) Thus, this Court is not inclined to assume that the doctor merely copied Plaintiff's activities from prior visits when the records do not so reflect.

Physical therapy records generally indicate that Plaintiff had significant improvement with physical therapy. After only one week of therapy, the therapist noted that Plaintiff's overall condition was improving, her gait was improving, Plaintiff was feeling better overall, Plaintiff quit taking her pain medication, and she was able to ascend twenty steps at her cousin's house without difficulty. A week later Plaintiff told the therapist that she was seeing significant improvement with physical therapy. On June 7, 2010, Plaintiff reported that she was still limited with standing and walking and she was unable to work, however, she also indicated that she was able to get herself to and from the grocery store with minimal difficulty. The therapist noted that Plaintiff's pain had decreased and she did not need to take hydrocodone for her pain. On July 28, 2010, the records indicate that Plaintiff could stand or walk for thirty minutes, but she was still using a cane for ambulation. In August 2010, Plaintiff reported feeling 30% better than before. The therapist noted that Plaintiff's pain had decreased to 5 or less in 3 visits, her swelling had decreased, and her gait had improved. In

17

September 2010, Plaintiff reported that she had days of no severe pain and she felt 50% better. Her pain level had decreased to 4. At the time of discharge, Plaintiff's pain level was at 3, on a scale of 0 to 10 with 10 being the most severe pain.

On June 4, 2010, Plaintiff reported to Dr. Royer that she was having significant improvement with physical therapy. On June 24, 2010, Plaintiff told Dr. Ozumba that she continued to have some discomfort in her low back, but she felt about 10% to 30% better. (Tr. 370.) In August of 2010, Plaintiff indicated that she had no change in her pain, but Dr. Royer noted that she appeared to have more flexibility in her foot and ankle and less stiffness in her gait. At her hearing, just a mere month after Dr. Jones provided his opinion, Plaintiff testified that she was seeing improvement with physical therapy and that her pain was at a level 3 with medication. An impairment that can be controlled or remedied by medication or therapy cannot serve as a basis for a finding of disability. *Johnson v. Bowen,* 864 F.2d 340, 348 (5th Cir. 1988).

The record simply does not support the conclusory opinion of Dr. Jones. In his opinion, Dr. Jones indicated that Plaintiff weighed 180 pounds, thus, demonstrating that Plaintiff lost a total of 14 pound from January to November 2010. This further contradicts the degree of limitation proposed by Dr. Jones and the alleged lack of daily living activities. Additionally, Dr. Jones failed to provide any treatment notes, therefore, this Court is unable to determine what evidence Dr. Jones relied upon in formulating his opinion. Dr. Jones similarly failed to cite to any physical examination findings, testing, or other objective data to support his conclusion. The ALJ found Plaintiff capable of performing sedentary work, however, due to Plaintiff's allegations of pain, the ALJ limited Plaintiff to work where she would be able to take stretch breaks every 20 minutes and she would never be

required to climb ladders, ropes, or scaffolds. These limitations are consistent with the opinion of Dr. Jones.

The Court finds that the ALJ provided the requisite good cause for assigning minimal weight to the opinion of Dr. Jones. The ALJ's decision is supported by substantial evidence and the ALJ would not have reached a different decision had she found Plaintiff's RSD/CRPS a medically determinable impairment. The ALJ discredited Dr. Jones' opinion because it was conclusory and inconsistent with the other evidence in the record, which has no bearing on the ALJ's acceptance or rejection of a specific diagnosis. Moreover, the ALJ considered Plaintiff's pain that resulted from the syndrome even if it was not labeled as RSD/CRPS.

In sum, even if the ALJ erred in not finding Plaintiff's RSD/CRPS a medically determinable impairment, Plaintiff failed to demonstrate how such error prejudiced her case. Hence, remand is not required and the decision of the ALJ should be affirmed.

## **Recommendation**

For the foregoing reasons, the Court recommends that the District Court AFFIRM the decision of the Commissioner, as it is supported by substantial evidence and the ALJ did not commit prejudicial legal error, and dismiss Plaintiff's Complaint with prejudice.

**SO RECOMMENDED**, July 19, 2013.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).